**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rene Sullivan,<br><br>              Plaintiff,<br><br>vs.<br><br>Salt River Project Agricultural<br>Improvement and Power District, a<br>political subdivision of the State of<br>Arizona,<br><br>              Defendant. | No.  CV-12-01810-PHX-SRB<br><br><br>**JOINT PROPOSED PRETRIAL<br>ORDER** |

Pursuant to the Scheduling Order previously entered, the following is the Joint Proposed Pretrial Order to be considered at the Final Pretrial Conference set for August 4, 2014, at 9:30 a.m. before Judge Bolton.

**A.  <u>TRIAL COUNSEL FOR THE PARTIES.</u>**

<u>Plaintiff's Counsel:</u>

Raees Mohamed, Esq.
KELLY/WARNER PLLC
8283 N. Hayden Rd., Ste. 229
Scottsdale, AZ 85258
Office Phone: (480) 331-9397
Fax: (866) 961-4984
raees@kellywarnerlaw.com


and

David A. Chami, Esq.
PRICE LAW GROUP, APC
1204 E. Baseline Rd. Suite 102
Tempe, AZ 85283
Office Phone: (866) 881-2133
Fax: (866) 401-1457
david@pricelawgroup.com

Defendant's Counsel:

John J. Egbert, Esq.
Kami M. Hoskins, Esq.
JENNINGS, STROUSS & SALMON, P.L.C.
One East Washington St., Ste. 1900
Phoenix, AZ 85004-2554
Office Phone: (602) 262-5911
Fax: (602) 495-2615
johnegbert@jsslaw.com
khoskins@jsslaw.com

**B.  STATEMENT OF JURISDICTION/VENUE.**

Jurisdiction in this case is based on federal question under Title VII of the Civil Rights Act of 1964.  *See* 28 U.S.C. § 1331; *see also* 42 U.S.C. § 2000e *et seq*.  Venue is before this Court pursuant to 28 U.S.C. § 1391(b).

The parties do not dispute jurisdiction or venue.

**C.  NATURE OF ACTION.**

This case arises out claims by Plaintiff Rene Sullivan ("Plaintiff" or "Ms. Sullivan") that Defendant Salt River Project Agricultural Improvement and Power District ("Defendant" or "SRP") is liable for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff alleges she was subjected to "sex-based" harassment and sexual harassment by a co-worker.  Plaintiff further alleges that after she complained about alleged sexual harassment her co-workers retaliated against her in a number of ways and SRP retaliated against her by terminating her contract.  SRP denies Plaintiff's allegations and claims.

Pursuant to the *Order* [Dkt. #55] dated June 5, 2014 (the "Summary Judgment Order"), the Court granted summary judgment in favor of SRP on Plaintiff's Counts 1 and 2 for "sex-based harassment" and sexual harassment, respectively.

Defendant's Supplemental Statement

The Court also granted summary judgment with respect to all forms of co-worker retaliation except for Plaintiff's allegation that she was excluded from workplace communications. *See* Summary Judgment Order at p. 12. Accordingly, the only issues remaining for trial are: (i) Plaintiff's claim related to co-worker retaliation based on being excluded from workplace communications; and (ii) Plaintiff's claim that SRP's termination of her contract was retaliatory.

**D. JURY/NON-JURY.**

Pursuant to the *Order* [Dkt. #19] dated June 5, 2013, the Court denied Plaintiff's Motion for Jury Trial as untimely.

**E. CONTENTIONS OF THE PARTIES.**

Material issues for trial are: (i) whether SRP unlawfully retaliated against Plaintiff by terminating her contract; (ii) whether SRP unlawfully retaliated against Plaintiff by not adequately addressing Plaintiff's complaints that she was left out of work communications in retaliation for her reports of sexual harassment; and (iii) whether the non-retaliatory reasons offered by SRP for terminating Plaintiff's contract are pre-textual.

1. Retaliation Based on Termination.

Plaintiff asserts a retaliation claim against SRP based on SRP's decision to terminate her contract. To establish a prima facie case of retaliation, Plaintiff must show: (i) that she engaged in protected activity; (ii) she suffered a materially adverse employment action; and (iii) that there was a causal relationship between the two. *See*

3

*Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (citing 42 U.S.C. § 2000e-3(a)); *see also Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002).  Plaintiff must show that her protected conduct was a "but-for cause" of her termination.  *See Westendorf*, 712 F.3d at 423; *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  An action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity.  *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (adopting the Equal Employment Opportunity Commission's test for establishing an adverse employment action).

If Plaintiff establishes a prima facie case for retaliation, the burden shifts to SRP to articulate a legitimate nondiscriminatory reason for the retaliatory action.  *See id*. at 1240.  If SRP articulates an appropriate legitimate nondiscriminatory reason, the burden shifts back to Plaintiff to establish that the articulated reason "was merely a pretext for a discriminatory motive."  *See id*.

2.  <u>Hostile Work Environment Co-Worker Retaliation</u>.

Plaintiff also asserts SRP unlawfully retaliated against her because her co-workers allegedly excluded her from certain workplace communications. To establish SRP is liable to Plaintiff for a hostile work environment co-worker retaliation claim, she must prove her former co-worker's alleged retaliation was sufficiently severe and pervasive that it rose to the level of an adverse employment action.  *See Fielder v. UAL Corp*., 218 F.3d 973, 984-85 (9th Cir. 2000), *vacated on other grounds*, 536 U.S. 919 (2002); *see also Gunnell v. Utah Valley State Coll*., 152 F.3d 1253, 1264 (10th Cir. 1998) (co-worker harassment, if sufficiently severe, may constitute "adverse employment action" for the purposes of a retaliation claim); *Booth v. Pasco County Fla*., 2014 WL 3031177 at **7-8, Case Nos. 12-14191, 12-13389 (11th Cir. July 3, 2014).  An action is cognizable as an

1   adverse employment action if it is reasonably likely to deter employees from engaging in

2   protected activity.  *See Ray*, 217 F.2d at 1243.

3       An employer cannot force employees to socialize with one another, and mere

4   ostracism by co-workers does not constitute an adverse employment action.  *See id.* at

5   1241; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (stating,

6   "holding an employer liable because its employees refuse to associate with each other

7   might well be unconstitutional: 'The First Amendment prevents the government, except

8   in the most compelling circumstances, from wielding its power to interfere with its

9   employees' freedom to believe and associate'").

10      If, however, Plaintiff can establish her co-workers' conduct rose to the level of an

11  adverse employment action, SPR is only liable for co-worker retaliatory harassment that

12  was "known to but not restrained by" SRP.  *See Hawkins v. Anheuser-Busch, Inc.*, 517

13  F.3d 321, 345 (6th Cir. 2008) (affirming summary judgment for employer); *see also*

14  *Moore v. City of Philadelphia*, 461 F.3d 331, 349 (3d Cir. 2006) (employer may be liable

15  for co-worker retaliation "where supervisors knew or should have known about the co-

16  worker harassment, but failed to take prompt and adequate remedial action to stop the

17  abuse").

18      To refute alleged legitimate, non-retaliatory actions to termination, Plaintiff can

19  prove pretext in two ways: (i) indirectly (specific and substantial), by showing that the

20  employer's proffered explanation is unworthy of credence because it is internally

21  inconsistent or otherwise not believable, or (ii) directly, by showing that unlawful

22  discrimination more likely motivated the employer. *Chuang v. Univ. of Cal. Davis*, 225

23  F.3d 1115, 1123–24 (9th Cir. 2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450

24  U.S. 248, 256, 101 S.Ct. 1089, 1096 (1981).  An employer's "reaction" to a plaintiff's

25

26                                              5

"legitimate civil rights activities" may be relevant to show pretext.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973).

3.  Monetary Relief / Damages.

Plaintiff alleges that but for Defendant's actions in violation of Title VII of the Civil Rights Act of 1964, Plaintiff was monetarily injured.  Among the damages Plaintiff seeks are: back pay, front pay, compensatory damages, nominal damages, punitive damages, attorney's fees and costs, and pre- and post- judgment interest on all amounts awarded at trial.  *See* 42 U.S.C.A. §§ 2000e-5(g) to 5(k); 42 U.S.C.A. § 1981a(a)(1); 42 U.S.C.A. § 1981a(b)(3).

Defendant alleges Plaintiff cannot prove a claim against Defendant under Title VII, and therefore, she is not entitled to and Defendant is not liable for damages. Alternatively, Defendant alleges that even if Plaintiff can prove a claim under Title VII, her damages calculations are erroneous.

**F.  STIPULATIONS AND UNDISPUTED FACTS.**

The following material facts are admitted by the parties and require no proof at trial:

1.      In April 2008, Plaintiff was hired by Job Brokers, a contracting firm, to work as a contract employee in the Outside Plant Group at SRP.

2.      Ms. Sullivan's immediate supervisor at SRP was Carrie Hutchinson until Ms. Hutchinson retired in December 2008.

3.      Robert Shackelton replaced Ms. Hutchinson as Ms. Sullivan's immediate supervisor at SRP.

4.      Mr. Shackelton supervised two work groups: the Outside Plant Group and the Wireless Group.

6

5.     Ms. Sullivan was hired as a contract employee to work as a Designer in the Outside Plant Group.

6.     Mr. Shackelton's supervisor was Chris Campbell, who was Manager of SRP's Communications Engineering Department.

7.     Ms. Sullivan's co-workers in the Outside Plant group, who also worked under Mr. Shackelton's supervision, were: (1) Mike Unser, a regular SRP employee whose job title was Communications Project Specialist; (2) Norm Reber, a regular SRP employee whose job title was Communications Project Specialist; and (3) Ruben Gomez, a contract employee whose job title was Drafter (and later GIS Technician).

8.     Ms. Sullivan complained about alleged sexual harassment to her supervisor, Mr. Shackelton, for the first time on or about January 26, 2010.

9.     After Mr. Shackelton spoke with Mr. Unser about Mr. Unser's alleged sexual harassment of Ms. Sullivan, Ms. Sullivan began to complain about Mr. Unser's alleged retaliatory actions.

10.     During a meeting between Ms. Sullivan and Mr. Campbell on April 14, 2010, Ms. Sullivan complained about alleged retaliatory conduct by co-workers in the Outside Plant Group. "After this meeting, Mr. Campbell developed an additional action plan allegedly to address Ms. Sullivan's concerns."

11.     On April 29, 2010, an Informational Coaching document was finalized by SRP for Mr. Unser and signed by Mr. Unser.  That document discussed both Ms. Sullivan's complaints about harassment and retaliation by Mr. Unser, including, Mr. Unser's alleged failure to "share knowledge and appropriate job related communications."   The Informational Coaching document warned Mr. Unser against retaliation, directed him to treat all co-workers "professionally with dignity and respect"

1   and told him that his failure to comply would result in further disciplinary action, up to

2   and including dismissal.

3        12.     In his commitment resulting from the Informational Coaching, Mr. Unser

4   stated: "All information flow regarding work, projects, technical information, etc. should

5   be communicated to all team members equally.  The purpose of this is so all team

6   members can benefit from the information which could allow them to be a greater benefit

7   to SRP.  I commit to distributing all information regarding work, projects, technical

8   information, etc. to the team by using the distribution list $OSP.  This will ensure

9   everyone receives the information."

10       13.     On May 10, 2010, Ms. Sullivan sent an email to Mr. Campbell saying:  "I

11  see an incredible attitude change amongst this team and wanted to say thank you for the

12  steps your management team has taken to correct the issue."  Mr. Campbell responded

13  that same day, saying "I am glad to hear there is improvement and expect this to be

14  sustained.  We will continue working on this."

15       14.     On May 27, 2010, Ms. Sullivan sent another email to Mr. Campbell saying

16  "I just wanted to say thank you again.  I continue to see major improvements on the

17  overall professionalism and attitude in our department.  We are working together as a

18  team for the first time since the blow-up in February."  Mr. Campbell responded the

19  following morning, saying:  "I am really glad to hear that things have improved and

20  appreciate the feedback.  It is important that we sustain this."

21       15.     Effective July 29, 2010, SRP terminated its contract with Job Brokers with

22  respect to Ms. Sullivan.

23       16.     Mr. Campbell is the person at SRP who made the decision to terminate Ms.

24  Sullivan's contract to work in the Outside Plant Group.

25

26                                          8

17.     Mr. Campbell created a report entitled the "Communications Engineering Fiscal Year '11 Workload Plan".

## G. **PLAINTIFF'S CONTENTIONS OF DISPUTED FACTS.**

1.     Mrs. Sullivan experienced sexual harassment at SRP, which formed the foundation of her initial complaints to her supervisor.

2.     Unser stated that when Shackelton spoke to him about his harassment against Ms. Sullivan, Shackelton, Chris Campbell, <u>never</u> gave him specifics regarding Ms. Sullivan's complaints

3.     Unser provided work feedback to other managers regarding Ms. Sullivan (either on request by upper management or voluntarily) that influenced their decision to fire Ms. Sullivan.

4.     Unser testified that he wanted Mrs. Sullivan fired.

5.     Despite Unser's "continued harassing remarks related to gender and sexual innuendo", as documented on April 29, 2010, Chris Campbell and Bob Shackelton merely gave Unser the written and dated Informational Coaching. This is despite Shackelton's understanding that providing an Informational Coaching document in response to such complaints is not according to SRP's grievance process or formal discipline process stated in its employment handbook, and despite having knowledge of Mr. Unser's conduct back in January, 2010.

6.     Despite the fact that Unser met with Chris Campbell in January regarding Ms. Sullivan's complaints, Chris Campbell waited four-months before he created and discussed the Information Coaching document with Unser. SRP waited four-months because it was at that time they decided to fire Mrs. Sullivan and knew that they had not properly documented the complaints in order to give the appearance that they had adequately responded to them.

7.     Ms. Sullivan did not believe Mr. Shackelton's or SRP's efforts relating to her complaints were sincere or effective.

8.     Mrs. Sullivan believed that "based on the actions and things going on, nothing had changed".

9.     SRP's actions aimed at stopping Unser from sexually harassing Ms. Sullivan were inadequate given that Campbell and Shackelton had actual knowledge of Unser's prior issues with women in the workplace before Mrs. Sullivan began working at SRP, in particular, his inappropriate language.

10.     Campbell expected Shackelton to have an "elevated sense of duty" to ensure that Unser didn't continue to abuse others at SRP. Campbell even warned Shackelton to "keep a close eye" on Unser to make sure such misconduct didn't continue.

11.     Mrs. Sullivan's workload decrease was "very noticeable" after her complaint and the workload decrease was "accelerated", until she was finally terminated.

12.     Ms. Sullivan noticed that after her complaint of sexual harassment in the workplace, the Notices to Proceed ("NTPs") were only being given out by the drafter.

13.     Ms. Sullivan knew that her decreased workload was the direct result of her complaint because the drafter in the OSP group, Ruben Gomez, was issuing NTPs and everyone in the OSP group was bragging about their increased levels of work; furthermore, a meeting was held regarding the fact that there was "more work than you have people".

14.     Ms. Sullivan believes that the real reason she was fired and why design work was increasingly sent to Ruben Gomez was because she made complaints about sexual harassment.

15.     After Ms. Sullivan complained about sexual harassment in January of 2010, Unser assigned design work to Ruben Gomez, even though Ms. Sullivan said that she

was available for design work and even though Unser was told that design work was Ms. Sullivan's priority.

16.     Because Ms. Sullivan was being frozen out of her own work and was not receiving work from Unser, she approached Shackelton and Campbell for additional work.

17.     During Unser's 10-year tenure in the OSP group at SRP, it was common for OSP workers to take work from the wireless group at SRP, and Unser himself worked on wireless projects.

18.     Campbell stated that "people from other groups come in and help with the workload in another group".

19.     The only reason Ms. Sullivan spoke to the wireless group was because she felt that after she made complaints to Shackelton of harassments and decreased work in the OSP group, Shackelton did not take the necessary steps to resolve the issues complained of.

20.     Ms. Sullivan is not aware of what instructions or steps were taken by Campbell to address the retaliation issues.

21.     After Ms. Sullivan complained about not receiving work as a result of Unser's retaliation, Shackelton never assigned work to Ms. Sullivan.

22.     Shackelton had actual knowledge that despite his requests to Norm Reber and Unser to copy all OSP workers on communications relating to projects, that several times Reber and Unser ignored these instructions and specifically left Ms. Sullivan off OSP project related emails. Shackelton had actual knowledge that Unser and Reber acted contrary to his instructions several times but never filed a complaint regarding this issue against Unser and Reber.

23.     Communication was a critical and essential job function for Mrs. Sullivan.

24.     Ms. Sullivan continued to experience a decline in communications from Unser and the OSP group as a whole, and that any improvement in emails was once again marginalized by a decline in communication from the OSP group.

25.     Mrs. Sullivan stated her workload decrease was "very noticeable" after her complaints of sexual harassment and stated her workload decrease was "accelerated", until she was finally terminated.

26.     In response to Ms. Sullivan's complaint that Mr. Unser was not copying her on emails related to project to which Ms. Sullivan was assigned. Mr. Shackelton requested, on December 30, 2009, March 18, 2010, and March 22, 2010, that all members of the Outside Plant Group copy all other members on such emails.

27.     Ms. Sullivan complained to Mr. Shackelton and then Mr. Campbell about being excluded from certain workplace communications, including but not limited to, emails and meetings, and "cut [her] out of critical work communications that were necessary for her to complete her core job functions."

28.     Mr. Norm Reber and Mr. Unser continued to leave Mrs. Sullivan off of OSP team communications, despite Mr. Shackelton's instructions. Nether Mr. Reber nor Mr. Unser were disciplined for their failure to comply with Mr. Shackelton's instructions.

29.     On May 3, 2012, Campbell assembled a list of ongoing issues that he used as a "discussion guide" when meeting with Unser and other OSP workers, and the list included discussions relating to ongoing harassment and retaliation, including "communication/participation", and "work assignments".

30.     Ms. Sullivan experienced, and complained of, retaliatory behavior on April 29, 2010.

31.     Chris Campbell's understanding that Ms. Sullivan was continuing to be harassed and retaliated against was not erroneous; in fact, on April 14th, 2010, Chris Campbell understood at that time that based on Ms. Sullivan's complaints to him Unser continued to sexually harass and retaliate against Ms. Sullivan after January 2010.

32.     Campbell "assumed there would be a reflection" of the ongoing harassment and retaliation by Unser, even though ultimately it was not documented in Unser's file—which Campbell admits, should have been.

33.     Ms. Sullivan continued to experience a decline in communications from Unser and the OSP group as a whole.

34.     Given the surrounding circumstances, Ms. Sullivan did not believe that Shackelton and Campbell's efforts were sincere.

35.     Campbell did not base his termination on workload reasons.

36.     On July 22, 2010, Mr. Campbell decided that he wanted to terminate Ms. Sullivan's contract.

37.     On July 22, 2010, Campbell decided to fire Ms. Sullivan, *days* after he created a communications engineering workload report in which he concluded that SRP would hire six out of the ten current contractors as fulltime employees. Ms. Sullivan always received "excellent" or "very good" employment reviews from Shackelton, but when asked why SRP terminated Ms. Sullivan, Campbell cited poor work performance and stated that Ms. Sullivan was not a "good fit" for the wireless group.

38.     Campbell considered Ms. Sullivan's complaints regarding Unser's sexual harassment and retaliation as *her* attitude problem.

39.     When she was walked out of SRP's premises on July 29, 2010, Ms. Sullivan was told she was being "let go" because of her "attitude".

40.     SRP needed Ms. Sullivan as a contractor for wireless work. In fact, Campbell assigned Ms. Sullivan to do wireless work instead of OSP work, as Ms. Sullivan had done in the past when OSP work slowed down.

41.     Campbell states that he did not want keep Ms. Sullivan to perform wireless work solely because he somehow felt she was not a "good fit". Campbell failed to offer a *single* reason why she was not a "good fit". Campbell could not find *any* reasons why he would differ from Shackelton's high performance ratings of Ms. Sullivan's work. Campbell never received any complaints about Ms. Sullivan's ability to perform wireless work.

42.     SRP *never* conducted an evaluation of Ms. Sullivan's competency and skills to do wireless work before they deemed her not a "good fit" and fired her.

43.     SRP's contradictory positions on Ms. Sullivan's fitness for wireless work, and overall work performance, is the elephant in the room. Ms. Sullivan received "very good" and "excellent" employment reviews from Shackelton in April 2010, *three months* before Campbell and Shackelton decided to terminate her citing poor work performance. Shackelton held Ms. Sullivan's work in high regard by documenting in her performance reviews that Ms. Sullivan was: "very thorough and produces very high quality work"; "[v]ery knowledgeable"; "very productive"; produces "a large quantity of project designs"; [v]ery responsive to customer request [sic]"; "is a team player and works well with everyone involved in her projects"; "does [sic] excellent job in communicating with everyone involved in her projects regarding project status"; "[v]ery good performance overall"; and "a great asset and team member for our group", among other positive feedback and reviews.

44.     Campbell explains his contradictory opinion by stating: "[i]t's possible he [Shackelton] could have made a mistake", and that perhaps, Shackelton made "multiple

mistakes" in giving Ms. Sullivan above-average performance ratings. Campbell's remarks are tainted with pre-text.

45.    SRP attempts to justify Ms. Sullivan termination by citing a decrease in the OSP group's workload. This explanation is similarly contradictory and not credible at all. Campbell fired Ms. Sullivan *days* after he created a communications engineering workload report stating a need for more labor in the communications department, which consisted of wireless and OSP only.

46.    Campbell's report advises that the 11 *existing* contractor positions met current workload demands. Campbell even anticipated hiring six of those existing contractors, including Ms. Sullivan, as fulltime employees. SRP failed to offer any explanation for this sudden and drastic change in its calculated workload projections. Instead, on August 4, 2010, after SRP terminated Ms. Sullivan, SRP documented its rationale for terminating Ms. Sullivan, which overwhelmingly cites non-workload related reasons. This document cites "Not Meeting Expectations", lack of "teamwork/collaboration", not taking direction, and not achieving "intended improvements", among other performance-based reasons for termination.  Again, not a single issue or complaint is documented anywhere in any of Ms. Sullivan's performance reviews.

47.    Although SRP states that it has "legitimate" reasons for terminating Ms. Sullivan, Defendant *concealed* material facts surrounding its true motivations. Shackelton deleted emails that may have been relevant to Ms. Sullivan's complaints about SRP's sexual harassment issues and retaliation. SRP selectively disclosed emails that were several years old, even though Shackelton admitted to deleting emails after only four months. Shackelton actively hid documents relating to Unser's sexual harassment, creation of a hostile work environment, and retaliation against Ms. Sullivan (among other

misconduct), despite Campbell's specific instruction to save and preserve such files in light of the EEOC's ongoing investigation.

48.     SRP never maintained any of Ms. Sullivan's complaints about Unser's conduct, as documented in the Information Coaching document, in Unser's personnel file. SRP actively hid Ms. Sullivan's 2009 contractor performance review and did not maintain a copy of such performance review in Ms. Sullivan's file.

49.     In Mrs. Sullivan's 2009 review, Shackelton stated that Ms. Sullivan had: "[v]ery good performance overall" and "Rene is [sic] always displays a very good work attitude".

50.     During the EEOC's investigation into SRP, Ruben Gomez failed to disclose the truth about the individuals that assigned him design work.

51.     Mrs. Sullivan engaged in a protected activity, i.e., complaining about sexual harassment, and thereafter, experienced materially adverse actions, including but not limited to a decline in allocation of work hours and eventually, termination of her contract.

## H.  DEFENDANT'S CONTENTIONS OF DISPUTED FACTS.

1.     The individuals in the Outside Plant Group (including Ms. Sullivan) performed only Outside Plant Group work, and there was not cross-assistance regularly provided between the Outside Plant and Wireless Groups.

2.     After Ms. Sullivan complained to Mr. Campbell on April 14, 2010, Mr. Campbell developed a plan of action to address the concerns Ms. Sullivan raised.

3.     In response to Ms. Sullivan's complaint that Mr. Unser was not copying her on emails about Notices-to-Proceed, Mr. Shackelton requested more than once that all members of the Outside Plant Group copy all other members on such emails.

4.     Mr. Shackelton also instructed Ms. Sullivan to contact an IT specialist within SRP to help create a mechanism by which all the people in the Outside Plant Group would automatically be copied whenever a Notice-to-Proceed email was sent.

5.     Ms. Sullivan acknowledges that she may have sometimes failed to copy everyone in the Outside Plant Group on her emails, but asserts that if it did occur she did it unintentionally.

6.     By April 28, 2010, Ms. Sullivan observed a marked improvement in being copied on emails.

7.     Mr. Campbell met individually with each of Ms. Sullivan's co-workers in the Outside Plant Group, during which meetings he stated his expectation that there would be zero tolerance for harassment, discrimination or retaliation of any kind.

8.     From time to time after Ms. Sullivan's initial complaint in January 2010, Mr. Shackelton asked Ms. Sullivan how she was doing.

9.     On more than one occasion, Mr. Campbell encouraged Ms. Sullivan to continue letting SRP know about any future problems that might occur.

10.     After Ms. Sullivan's notes to Mr. Campbell in May 2010, reporting on the substantial improvements in the Outside Plant Group, Mr. Campbell received no further complaints regarding Mr. Unser from Ms. Sullivan until July 20, 2010.

11.     Ms. Sullivan believed that Mr. Campbell was making a sincere, good faith effort to resolve her concerns of retaliation.

12.     Each year, SRP prepares resource project estimates.  The first draft of the projection for fiscal year 2011 was completed at the end of May, 2010.

13.     Mr. Campbell told Mr. Shackelton of his decision to terminate Ms. Sullivan's contract, and asked Mr. Shackelton if there was any reason they should not proceed with the termination.

14.     The decision to terminate Ms. Sullivan's contract was based on a projected substantial decrease in workload for the Outside Plant Group during fiscal year 2011 (May 2010 through April 2011).

15.     The data projected that the workload for the Outside Plant Group would decrease by nearly 2,000 labor hours from fiscal year 2010 to fiscal year 2011. Therefore, the Outside Plant Group would have enough work for only three people. Thus, the data indicated that Mr. Campbell had one too many individuals working in the Outside Plant Group.

16.     In June 2010, Mr. Campbell started considering the possibility of terminating Ms. Sullivan's contract to adjust the size of the Outside Plant Group to match the workload.

17.     Mr. Campbell presented the results of the workload plan to his supervisors on July 14, 2010, and he also presented it to the employees in his department on July 22, 2010.

18.     On July 22, 2010, Mr. Campbell made the decision to terminate Ms. Sullivan's contract, but because her direct supervisor was on vacation, he wanted to wait and did wait until he could confirm that decision with Mr. Shackelton.

19.     The termination decision was finalized on July 27, 2010 after Mr. Shackelton returned from vacation and Mr. Campbell was able to speak with him about it.

20.     Mr. Campbell selected Ms. Sullivan to be the one to let go because: (a) Mr. Unser and Mr. Reber were regular SRP employees, not contract employees, and one of the reasons SRP uses contract employees like Ms. Sullivan and Mr. Gomez is to allow SRP to respond to peaks and valleys in workload without affecting its regular employees; and (b) he decided not to terminate Mr. Gomez, the other contract employee, because his

skills in performing the GIS functions are critically important for the Outside Plant Group, and none of the other three members of the group (including Ms. Sullivan) possessed these skills.

21.     As it turns out, the workload projections for fiscal year 2011 were correct. To this day there still are only three members of the Outside Plant Group.

22.     The total amount of overtime Norm Reber worked in 2009 was 124 hours; in 2010, that decreased to 76.5 hours.  The total amount of overtime Mike Unser worked in 2009 was 198.5 hours; in 2010, that decreased to just 10 hours.

23.     The fact that some overtime was being worked in 2010 (albeit less than in 2009) does not mean that the workload in the Outside Plant Group was not decreasing. Because the various jobs performed in the Outside Plant Group are sometimes time sensitive, the member of the Outside Plant Group working on the job may need to work overtime hours to complete the job timely, even when there is otherwise a lack of work within the group.

24.     The decision to terminate Ms. Sullivan's contract was also supported by the fact that Mr. Campbell did not have any other position that needed to be filled that was a good fit for her skills, experience and performance.

25.     The feedback Mr. Campbell got from the Wireless Group was that Ms. Sullivan was not a good fit because of some of her inappropriate interactions with members of the Wireless Group and its customers.

26.     Ms. Sullivan received unemployment compensation in the amount of $2,160.00 in 2010.

27.     In 2010, Ms. Sullivan received wages from Widelity in the amount of $14,569.00.

28.     In 2011, Ms. Sullivan received wages in the amount of: (i) $630.00 from MDI; (ii) $4,732.00 from Widelity; (iii) $25,186.00 from Project Engineers; and (iv) $15,611.00 from APS.

29.     In 2012, she received wages in the amount of $63,938.00 from APS.

30.     From January 2013 through September 23, 2013, she received wages in the amount of $51,174.00 from APS.

31.     Ms. Sullivan's employment with APS began on September 26, 2011.  On that date, she earned $26.37 hourly, plus benefits.

32.     On February 23, 2012, APS increased her compensation to $27.55 hourly, plus benefits.

33.     On February 22, 2013, APS increased her compensation to $28.51 hourly, plus benefits.

**I.  ISSUES OF LAW IN CONTROVERSY.**

As set forth above, the parties dispute the effect of the Court's Summary Judgment Order.

Plaintiff's contention is that the following material issues remain for trial: (i) whether SRP unlawfully retaliated against Plaintiff by terminating her contract; (ii) whether the termination of her contract was pretextual (*See* Summary Judgment Order at p. 15); (iii) whether SRP took effective measures to remedy Mrs. Sullivan's complaints regarding the re-allocation of her design work, her lack of work, and icing her out of communications meant for the OSP team (*See* Summary Judgment Order at p. 11-12); and (iv) whether the non-retaliatory reasons offered by SRP are merely pre-textual, including but not limited to: (a) whether Plaintiff's complaint of harassment caused Plaintiff's workload to decrease (*See* Summary Judgment Order at p. 11); (b) whether "the temporal proximity between Plaintiff's final complaint regarding not being copied

20

on emails and [Defendant's] decision to terminate her" show Defendant's stated reasons for terminating her contract were pretextual (*See* Summary Judgment Order at p. 15-16); (v) whether SRP adequately addressed Mrs. Sullivan's complaints regarding being continuously left off work related emails (*See* Summary Judgment Order at p. 12); and (vi) whether "evidence that [Plaintiff] received positive evaluations that undermine Defendant's claims that Plaintiff was not meeting expectations" show Defendant's stated reasons for terminating her contract were pretextual (*See* Summary Judgment Order at p. 15-16).

Defendant's contention is the only issue remaining with respect to co-worker retaliation claim is "whether Defendant adequately addressed Plaintiff's complaints that she was left out of work communications in retaliation for her reports of sexual harassment." *See* Summary Judgment Order at p. 12. This Court has already ruled that, "Plaintiff's remaining theories of retaliation by her coworkers fail." *See id*.

**J. <u>SEPARATE TRIAL OF ISSUES</u>.**

The parties do not believe a separate trial of any issue is advisable or feasible in this case.

**K. <u>WITNESSES</u>.**

<u>Plaintiff's Witnesses</u>

1. **Rene Sullivan**: Plaintiff anticipates that this individual has discoverable information regarding the following: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination.

2. **SRP Councilman District 3, Mario J. Herrera**: regarding letter of recommendation for Rene Sullivan.

Defendant's Objection: Plaintiff failed timely to disclose Mr. Herrera as a trial witness.  Therefore, Defendant objects to Mr. Herrera's inclusion on Plaintiff's list of trial witnesses and requests the Court exclude his testimony.  *See Rule 16 Scheduling Order*, Dkt. #18 at pp. 2-3.

3. **SRP Director At-Large, Seat 12 William W. Arnett**: regarding letter of recommendation for Rene Sullivan.

Defendant's Objection: Plaintiff failed timely to disclose Mr. Arnett as a trial witness.  Therefore, Defendant objects to Mr. Arnett's inclusion on Plaintiff's list of trial witnesses and requests the Court exclude his testimony.  *See Rule 16 Scheduling Order*, Dkt. #18 at pp. 2-3.

4. **Carissa Sharrar**: Plaintiff anticipates that this individual has discoverable information regarding the following: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination.  Carissa is also expected to testify as to similar incidents of harassment that Defendant engaged in against her.

5. **Edmund Macias**: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and

ultimately her termination.

6. **Joe Pacheco**: Plaintiff anticipates that this individual has discoverable information regarding the following: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination.

7. **Ruben Gomez**: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination.

8. **Carrie Hutchinson**: Plaintiff anticipates that this individual has discoverable information regarding the following: her warning stated to Shackelton regarding being cautious of Unser's conduct in the workplace.

    Defendant's Objection: Plaintiff failed timely to disclose Ms. Hutchinson as a trial witness. Therefore, Defendant objects to Ms. Hutchinson's inclusion on Plaintiff's list of trial witnesses and requests the Court exclude his testimony. *See Rule 16 Scheduling Order*, Dkt. #18 at pp. 2-3.

9. **Norm Reber**: Plaintiff anticipates that this individual has discoverable information regarding the following: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all

of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination.

10. **Robert D. Shackleton**: Plaintiff anticipates that this individual has discoverable information regarding the following: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination. Robert is also expected to testify regarding the numerous communications he had with Plaintiff regarding the foregoing acts.

11. **Mindy Root**: Plaintiff anticipates that this individual has discoverable information regarding the following: her past experiences with SRP.

     Defendant's Objection: Plaintiff failed timely to disclose Ms. Root as a trial witness. Therefore, Defendant objects to Ms. Root's inclusion on Plaintiff's list of trial witnesses and requests the Court exclude his testimony. *See Rule 16 Scheduling Order*, Dkt. #18 at pp. 2-3.

12. **Mike Unser**: The sexual harassment against Plaintiff and the unreasonable interference it created in her work performance. Complaints about sexual harassment by male co-workers and supervisors, retaliation, which included some or all of the following: reducing Plaintiff's work load; excluding her from work related activities; reassigning her job duties to lower level male contract employees; and ultimately her termination. Mike is also expected to testify regarding his misconduct and inappropriate remarks of a sexual nature directed at Plaintiff.

     **Defendant's Witnesses**

1.   **Chris Campbell**: Mr. Campbell is expected to testify about Plaintiff's job performance, the environment and job functions where Plaintiff worked, Plaintiff's complaints regarding co-workers, SRP's response to complaints, and the decision to terminate the contract for Plaintiff's work.

2.   **Robert Shackelton**: Mr. Shackelton is expected to testify about Plaintiff's job performance, the environment and job functions where Plaintiff worked, Plaintiff's complaints regarding co-workers, SRP's response to complaints, and the decision to terminate the contract for Plaintiff's work.

3.   **Ruben Gomez**: Mr. Gomez is expected to testify about interactions with Plaintiff and Plaintiff's allegations of retaliation.

Plaintiff's Objection: Relevancy; Defendant was required to provide "a very short summary of the intended testimony of the witness", which Defendant did not do.

4.   **Lynn Runyan**: Ms. Runyan is expected to testify about interactions with Plaintiff and Plaintiff's allegations of retaliation.

Plaintiff's Objection: Relevancy; Defendant was required to provide "a very short summary of the intended testimony of the witness", which Defendant did not do.

5.   **Tim Boughton**: Mr. Boughton is expected to testify about interactions with Plaintiff and Plaintiff's allegations of retaliation.

Plaintiff's Objection: Relevancy; Defendant was required to provide "a very short summary of the intended testimony of the witness", which Defendant did not do.

6.   **Carissa Scharrer**: Ms. Scharrer is expected to testify about interactions with Plaintiff and Plaintiff's allegations of retaliation.

Plaintiff's Objection: Relevancy; Defendant was required to provide "a very short summary of the intended testimony of the witness", which Defendant did not do.

7.    **Robert Nichols**: Mr. Nichols is expected to testify about the value of SRP's compensation package (salary plus benefits) of its Outside Plant Group designers employed as regular employees, as compared to those employed as contractors (who receive no benefits); SRP's compensation package for designers employed as regular employees, as compared to SRP's competitors such as APS; and SRP's relationship with contractors.

Plaintiff's Objection: The testimony above cannot be offered as it includes testimony that is beyond lay witness testimony under Rule 701, of the Federal Rules of Evidence. Under Fed. R. of Evid., R. 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion" must <u>not</u> be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." This testimony if properly categorized as expert testimony; however, Defendant failed to disclose Mr. Nichols as an expert.

8.    **Sue Riordan**:  Ms. Riordan is expected to testify about SRP's investigation of Plaintiff's claims of retaliation, Plaintiff's job performance, the environment and job functions where Plaintiff worked, Plaintiff's complaints regarding co-workers, SRP's response to complaints, and the decision to terminate the contract for Plaintiff's work.

9.    **Any witnesses listed by Plaintiff**.

**L.   <u>EXPERTS</u>.**

Plaintiff's Expert Witness

Plaintiff will call Dr. Brian H. Kleiner, Ph.D., as an expert to testify as to Defendant's retaliatory conduct, and Defendant's inadequate steps to prevent retaliation, and Defendant's failure to adequately justify Plaintiff's termination.

Defendant objects to Plaintiff's expert witness based on the grounds set forth in its *Motion in Limine re: Excluding Dr. Kliener's Opinion* filed on July 21, 2014.

Defendant's Expert Witness

None

**M.** **EXHIBITS AND DEPOSITIONS.**

**Plaintiff's Exhibits**

1.     Deposition of Bob Shackelton - per deposition pages and lines referenced, attached.

Defendant's Objections: Improper use of deposition; incomplete excerpt.

2.     Deposition of Mike Unser: per deposition pages and lines referenced, attached.

Defendant's Objections: Improper use of deposition; incomplete excerpt.

3.     SRP's Responses to Plaintiff's First Set of Interrogatories, Request for Production, and Request for Admissions.

Defendant's Objection: Relevance.

4.     Email Correspondence from Bob Shackelton dated December 30, 2009. RS0074.

5.     Informational Coaching dated April 29, 2010.  SRP00904.

6.     Email Corresponded from Rene Sullivan dated April 8 2010.

7.     SRP Contract Employee Review Form from 2009.

8.     SRP Contract Employee Review Form from 2010

9.     Email from Lynn Runyan to Bob Shackelton regarding Mrs. Sullivan's outstanding performance.

10.     SRP Employee Handbook.

11.     SRP Annual Employment Review of Unser.  SRP01017.

Defendant's Objection: Relevance.

12.     SRP Employment Development and Appraisal for Unser. SRP01013.

Defendant's Objection: Relevance.

13.    SRP Performance Appraisal for Unser.  SRP01083.

Defendant's Objection: Relevance.

14.    SRP Employment Development and Appraisal for Unser, #2.  SRP01008.

Defendant's Objection: Relevance.

15.    Email correspondence between Campbell and Shackelton dated April 26, 2012.  SRP0996.

16.    Communications Engineering FY11 Workload Plan.  RS0045.

17.    March 16, 2010 email from Rene Sullivan to Bob Shackelton re: lack of response to work inquiry. RS 00604 – 605.

18.    SRP'S Contract Employee Review of Rene Sullivan dated 2/23/2009. RS 00588 – 589.

19.    SRP'S past "Employee Handbook". RS 00590 – 600.

20.    Document titled "Documentation for Rene Sullivan's Dismissal from Communications Engineering" dated 9/4/2010. RS 00601 – 602.

21.    Letter of Recommendation to Rene Sullivan from SRP Councilman District 3, Mario J. Herrera. RS 586.

Defendant's Objections: Hearsay, foundation.

22.    Letter of Recommendation to Rene Sullivan from SRP Director At-Large, Seat 12 William W. Arnett. RS 587.

Defendant's Objections: Hearsay, foundation.

23.    Rene Sullivan's salary and hourly wage paid by Pinnacle West Capital Corp. from here date of hire through August 27, 2013. RS 504.

24.    Rene Sullivan's pay check "stubs" from Pinnacle West Capital Corp. RS 505 – 517.

25.     Rene Sullivan's compensation information. RS 518 – 523.

26.     Department of Economic Security File regarding Rene Sullivan's unemployment claim. RS 524 – 585.

Defendant's Objections: Improper collection of numerous documents into single exhibit, some of which are objectionable on grounds of relevance, hearsay, and foundation.

27.     Documents relating to Plaintiff's EEOC Complaint supporting Plaintiff's sexual harassment and retaliation claims, including event logs, emails to Rob Shackelton, and Plaintiff's work calendar. RS  00040 – 166.

Defendant's Objections: Improper collection of numerous documents into single exhibit, some of which are objectionable on grounds of relevance, hearsay, and foundation.

28.     Documents relating to Plaintiff's EEOC Complaint supporting Plaintiff's sexual harassment and retaliation claims, including intake forms, allegations made in her EEOC Complaint, notes from interviews with SRP employees, emails between Plaintiff and SRP employees, SRP Power Points, and SRP employee reviews. RS 00167 – 464.

Defendant's Objections: Improper collection of numerous documents into single exhibit, some of which are objectionable on grounds of relevance, hearsay, and foundation.

29.     Emails from Sue Riordan (SRP H.R. Representative) and relating documents. RS 00465 – 503.

Defendant's Objection: Relevance.

30.     Documents from Mrs. Sullivan bates labeled: RS 00001 to RS 00039.

1        **Defendant's Objections**: Improper collection of numerous documents into

2 single exhibit, some of which are objectionable on grounds of relevance, hearsay, and

3 foundation.

4        31.   **Plaintiff's** Damage Computation, Fourth Supplemental Disclosure

5 Statement.

6        **Defendant's Objections**: Hearsay.

7   **Defendant's Exhibits**

8   1.   SRP Position Statement dated 9/27/10 (with attachments).  SRP00216-83.

9 Plaintiff's Objection: Defendant failed to identify and separate the referenced

10 exhibits, individually; lack of foundation; hearsay.

11   2.   Letter from EEOC dated 2/22/12.  SRP00202-04.

12 Plaintiff's Objection: Defendant failed to identify and separate the referenced

13 exhibits, individually; lack of foundation; hearsay.

14   3.   SRP letter to EEOC dated 4/2/12 (with attachments).  SRP00015-201.

15 Plaintiff's Objection: Defendant failed to identify and separate the referenced

16 exhibits, individually; lack of foundation; hearsay.

17   4.   Email from Kimberly Eberhard to Chris Campbell re OT Report dated

18 4/15/10.  SRP00290.

19 Plaintiff's Objection: Lack of foundation; hearsay,

20   5.   Email string dated 7/16/10 re T-Mobile OSP.  SRP00293-94.

21 Plaintiff's Objection: Lack of foundation; hearsay.

22   6.   Email string re T-Mobile Backhaul Construction.  SRP00295-96.

23   7.   Email string re Kempton Verification/Western Canal-Removals.

24 SRP00320-28.

25 Plaintiff's Objection: Lack of foundation; hearsay.

26

8.      Communications Engineering FY11 Workload Plan.  SRP00444-55.

9.      Plaintiff's log dated 4/27/10.  SRP00482.

10.     Plaintiff's log dated 4/28/10.  SRP00480.

11.     Emails between Plaintiff and Chris Campbell dated 4/29/10 and 4/30/10. SRP00491-92.

12.     Emails between Plaintiff and Robert Shackelton dated 3/26/10.  SRP00493-94.

13.     Email from Robert Shackelton re Notes dated 3/22/10.  SRP00507.

14.     Email string re Email Correspondence dated 12/30/09.  SRP00508.

15.     Email from Plaintiff to Robert Shackelton dated 3/18/10.  SRP00510.

16.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Job ID: 4905. SRP00511.

17.     Email string between Plaintiff and Robert Shackelton dated 3/18/10 re Job ID: 4973.  SRP00520.

18.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Job ID: 5009. SRP00521.

19.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Job ID: 4985. SRP00522.

20.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re ESP 4812. SRP00523.

21.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Taser. SRP00525.

22.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Job ID: 4907. SRP00526.

23.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Job ID: 4919. SRP00527.

24.     Email from Plaintiff to Robert Shackelton dated 3/18/10 re Job ID: 4800. SRP00528.

25.     Email string between Plaintiff and Robert Shackelton dated 4/9/10 and 4/12/10 re Job ID: 4964.  SRP00584.

26.     Email from Plaintiff to Sue Riordan dated 4/16/10.  SRP00575-76.

27.     Email string re OSP workload, dated 3/15/10 and 3/16/10.  SRP00580.

Plaintiff's Objection: Lack of foundation; hearsay.

28.     Email from Chris Campbell to Plaintiff re Thumb Drive dated 4/19/10. SRP00640.

29.     Email from Plaintiff to Robert Shackelton dated 7/23/10 re Triplet Mountain.  SRP00642-43.

30.     Comm Engineering Labor Assessment (FY11).  SRP00869.

Plaintiff's Objection: lack of foundation; hearsay; duplicative.

31.     Plaintiff's resume.  SRP00887-91.

32.     Handwritten notes by Chris Campbell re meeting with Plaintiff on 4/14/10. SRP00894-95.

Plaintiff's Objection: lack of foundation; hearsay; unauthenticated; best evidence.

33.     Documentation of contractor interaction on 4/29/10.  SRP00896-97.

Plaintiff's Objection: lack of foundation; hearsay.

34.     Contractor response dated 4/30/10.  SRP00898.

Plaintiff's Objection: lack of foundation; hearsay.

35.     OSP Team – Discussion Guide, dated 5/3/10.  SRP00906.

Plaintiff's Objection: lack of foundation; hearsay; unauthenticated; best evidence.

36.    OSP Team Issues – Action Plan, dated 5/3/10.  SRP00908.

37.    Co-Employment FAQs.  SRP01203-17.

Plaintiff's Objection: lack of foundation; hearsay.

38.    Email string re T-Mobile Construction Schedule.  RS00210-13.

Plaintiff's Objection: lack of foundation; hearsay.

39.    Email string re Triplett.  RS00214.

Plaintiff's Objection: lack of foundation; hearsay.

40.    Email string re Suggestion for delivery of Wrath.  RS00215.

Plaintiff's Objection: lack of foundation; hearsay.

41.    Email string re Service Request LMRUNYAN.  RS00216-19.

42.    Email from Robert Shackelton to Plaintiff dated 4/19/10.  RS00783.

43.    Payroll records summary.  SRP00968.

Plaintiff's Objection: lack of foundation; hearsay.

44.    Plaintiff's form W-2 for 2009 from Job Broker's Inc.  MH00095.

Plaintiff's Objection: lack of foundation; hearsay.

45.    Plaintiff's form W-2 for 2010 from Job Broker's Inc.  MH00097.

Plaintiff's Objection: lack of foundation; hearsay.

46.    Plaintiff's form W-2 for 2011 from MDI Careers.  MH00113.

Plaintiff's Objection: lack of foundation; hearsay.

47.    Plaintiff's form 1099-Misc for 2011 from Power Engineers, Inc. MH00115.

Plaintiff's Objection: lack of foundation; hearsay.

48.    Plaintiff's DES benefit payment history.  RS0525.

49.    DES Wage/Employment investigation request.  RS0565.

50.    Plaintiff's APS time card report.  APS000036-46.

Plaintiff's Objection: lack of foundation; hearsay.

51.    Plaintiff's APS employee data sheet.  APS000047-52.

Plaintiff's Objection: lack of foundation; hearsay.

52.    Plaintiff's APS employee benefit summary sheet.  APS000053-56.

Plaintiff's Objection: lack of foundation; hearsay.

53.    Plaintiff's APS deposit advice.  APS000059.

Plaintiff's Objection: lack of foundation; hearsay.

54.    Pinnacle West Capital Corporation 401(k) Savings Plan Summary of Benefits.  APS000063-94.

55.    Pinnacle West Capital Corporation Retirement Plan Description. APS000095-121.

**N.  MOTIONS IN LIMINE AND REQUESTED EVIDENTIARY RULINGS.**

SRP filed the *Motion in Limine re: Excluding Dr. Kliener's Opinion*, and SRP anticipates the Court will rule on the motion at the Final Pretrial Conference. Plaintiff is filing a response on or before July 30, 2014.

**O.  PROBABLE LENGTH OF TRIAL.**

The parties estimate the trial will take approximately four (4) days.

**P.  TRIAL DATE.**

Plaintiff submits the following dates as available for trial:

August 25th through Aug. 29th, 2014

November 10th through Nov. 15th, 2014

December 17th through Dec. 21st, 2014

January 19th, 2015, onwards.

**Q. <u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>.**

The parties will separately file their Proposed Findings of Fact and Conclusions of Law.

**R. <u>MISCELLANEOUS</u>.**

Plaintiff hereby requests that out-of state, non-expert witnesses be able to appear via telephonic appearance at trial.

Unless and until Plaintiff discloses specific details regarding the location of such a non-expert witness and the reasons why the witness is not available and was not previously deposed, Defendant objects to Plaintiff's above-stated request because it is vague and overbroad.

**S. <u>MODIFICATION OF ORDER</u>.**

**APPROVED AS TO FORM AND CONTENT**:

**PRICE LAW GROUP, APC**
/s/ David A. Chami                  .
David A. Chami
1204 E. Baseline Rd. # 102
Tempe AZ 85283
David@pricelawgroup.com

**KELLY / WARNER, PLLC**
/s/ Raeesabbas Mohamed          .
Raeesabbas Mohamed
8283 N. Hayden Rd. # 229
Scottsdale, Arizona 85258
Raees@kellywarnerlaw.com
*Attorneys for Plaintiff*

**JENNINGS, STROUSS & SALMON, P.L.C.**
/s/ John J. Egbert                  .
John J. Egbert
Kami M. Hoskins,
One East Washington St., # 1900
Phoenix, AZ 85004-2554
johnegbert@jsslaw.com
khoskins@jsslaw.com
*Attorneys for Defendant*

Dated this 6th day of August, 2014.

_____
Susan R. Bolton
United States District Judge